UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CATHY RAE GRADY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CAUSE NO. 1:22-cv-00007-SLC |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Cathy Rae Grady ("Grady") appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). For the following reasons, the Commissioner's decision will be REMANDED.

### I. FACTUAL AND PROCEDURAL HISTORY

Grady applied for benefits in March 2019, alleging disability beginning May 1, 2018. (ECF 9 Administrative Record ("AR") 11, 449-57).[1] Grady's claims for DIB and SSI were denied initially and upon reconsideration. (AR 298-99, 332-33). After a timely request (AR 371-72), a hearing was held on March 3, 2021, before administrative law judge ("ALJ") Kathleen Winters, at which Grady, represented by counsel, and a vocational expert testified (AR 241-69). On April 22, 2021, the ALJ rendered an unfavorable decision to Grady, concluding that she is not disabled because she can perform her past relevant work as a collection clerk and a household appliance salesperson despite the limitations caused by her impairments. (AR 16-28). Grady's request for review was denied by the Appeals Council (AR 6-

---

[1] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top left of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

12), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. §§ 404.981, 416.1481.

Grady filed a complaint with this Court on January 7, 2022, seeking relief from the Commissioner's decision. (ECF 1). In her appeal, Grady alleges that the ALJ: (1) erred in evaluating the Listings; and (2) erred in failing to properly consider her fibromyalgia. (ECF 11 at 2).

On the date the ALJ issued her decision, Grady was fifty-seven years old (AR 449), and the ALJ found that she had past relevant work as a collections clerk and household appliance salesperson. (AR 27). The ALJ concluded that Grady is capable of performing her past relevant work both as a collection clerk and a household appliance salesperson. (*Id.*). In her application, Grady alleged disability due to fibromyalgia, spinal stenosis, osteoarthritis, herniated disc neck and back, degenerative disc disease, anxiety, diverticulitis, and tears in her right shoulder. (AR 492).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence,

reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB or SSI must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work; and (5) whether she is incapable of performing any work in the national economy.[2] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. §§ 404.1520, 416.920. "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

---

[2] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* §§ 404.1520(a)(4), 416.920(e).

*B. The Commissioner's Final Decision*

On April 22, 2021, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 16-28). At step one, the ALJ concluded that Grady has not consistently engaged in substantial gainful activity since May 1, 2018, her alleged onset date. (AR 19). At step two, the ALJ found that Grady has the following severe impairments: degenerative disc disease and stenosis of the cervical spine at C4-5, spinal cord compression and bilateral nerve root compression at C4-5, and degenerative disc disease of the lumbar spine with spinal stenosis at L4-5 and foraminal compromise at L5-S1. (AR 23). The ALJ also found that Grady has the non-severe impairments of obesity, generalized anxiety disorder, mild major depressive disorder, and post-traumatic stress disorder. (AR 20).

At step three, the ALJ concluded that Grady does not have an impairment or combination of impairments severe enough to meet or equal a listing under 20 C.F.R. § 404, Subpart P, Appendix 1. (AR 23-24). Before proceeding to step four, the ALJ determined that Grady's symptom testimony was not entirely consistent with the medical evidence and other evidence of record with respect to her limitations. (AR 24-25). The ALJ assigned Grady the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can occasionally climb stairs or ramps, stoop, kneel, crouch, or reach overhead with the right (dominant) upper extremity; and can never limb ladders/ropes/scaffolds, or balance as the term is used vocationally, or crawl. Must avoid all exposure to moving machinery and unprotected heights. No production rate pace work.

(AR 24). The ALJ found at step four that Grady has past relevant work as a collection clerk and a household appliance salesperson. (AR 27). The ALJ found that Grady is capable of performing her past relevant work. (*Id.*). Therefore, Grady's applications for DIB and SSI were denied. (AR 28).

*C. Listing 1.04A*

Grady asserts that the ALJ erred by failing to discuss Listing 1.04A. (ECF 11 at 9-14). The ALJ noted that in April 2021, subsequent to Grady's hearing but prior to the ALJ's decision, the Listings for musculoskeletal impairments changed. (AR 23). Listing 1.04A has been incorporated in Listing 1.15. *See, e.g., McPherson v. Kijakazi,* No. 1:20CV710, 2021 WL 5889988, at *5 n.6 (M.D.N.C. Dec. 13, 2021),

4

*report and recommendation adopted,* No. 1:20-CV-710, 2022 WL 1441226 (M.D.N.C. Jan. 11, 2022) (citing Recission of Acquiescence Ruling 15-1(4), 85 FR 79063, 2020 WL 7209986 (Dec. 8, 2020)). However, the ALJ examined Grady's impairments under both former Listing 1.04A and Listing 1.15 and found that Grady did not meet or medically equal either Listing. (AR 23). Grady does not argue that the ALJ improperly evaluated whether her impairments meet or medically equal Listing 1.15, only that the ALJ improperly evaluated Listing 1.04A.

The Court need not examine whether the ALJ improperly evaluated Listing 1.04A, because even if Grady were found disabled under Listing 1.04, the regulations would require a new hearing to determine if she still qualified for disability under Listing 1.15. *POMS DI* 27515.005. Listing 1.04A was not applicable on April 22, 2021, the date of the ALJ's decision, as the new Listing 1.15 went into effect on April 2, 2021. The ALJ evaluated Grady's musculoskeletal impairments under Listing 1.15, and Grady takes no issue with the ALJ's analysis. The ALJ was not required to evaluate former Listing 1.04A, and any analysis of Listing 1.04A is irrelevant where the ALJ fully evaluated Grady's impairments under Listing 1.15. As a result, the ALJ did not err by failing to analyze Listing 1.04A, as Listing 1.15 is the applicable Listing.

*D. Fibromyalgia*

Grady also asserts that the ALJ erred by failing to find her fibromyalgia to be a severe impairment at step two. (ECF 11 at 14-16). Step two of the five-step sequential process requires the ALJ to determine whether the claimant has a severe impairment. "The Step 2 determination is a *de minimis* screening for groundless claims . . . ." *O'Connor-Spinner v. Colvin,* 832 F.3d 690, 697 (7th Cir. 2016) (citation and internal quotation marks omitted); *see also Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016); *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). "An impairment is 'not severe' only if it is 'a slight abnormality' that has 'no more than a minimal effect on the ability to do basic work activities . . . .'" *Meuser,* 838 F.3d at 910 (quoting SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996)); *see also O'Connor-Spinner,* 832 F.3d at 697. "When evaluating the severity of an impairment, the ALJ assesses its functionally limiting effects by evaluating the objective medical evidence and the claimant's statements

5

and other evidence regarding the intensity, persistence, and limiting effects of the symptoms." *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016) (citation omitted).

At any rate, "any error that an ALJ commits at step two is harmless as long as she goes on to consider the combined impact of a claimant's severe and non-severe impairments." *Loftis v. Berryhill*, No. 15 C 10453, 2017 WL 2311214, at *2 n.1 (N.D. Ill. May 26, 2017) (citing *Curvin v. Colvin*, 778 F.3d 645, 648-49 (7th Cir. 2015)); *see also Arnett*, 676 F.3d at 591 ("An ALJ must evaluate all relevant evidence when determining an applicant's RFC, including evidence of impairments that are not severe." (citations omitted)). "A failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted)); *compare Rice v. Berryhill*, No. 17 C 1193, 2018 WL 2049931, at *5 (N.D. Ill. May 2, 2018) (finding the ALJ's step-two determination that the claimant's major depression was non-severe was not a harmless screening error because the ALJ did not include any mental limitations in the RFC), *with Loftis*, 2017 WL 2311214, at *2 n.1 (finding the ALJ's step-two determination that the claimant's major depression was non-severe was harmless because the ALJ went on to consider the combined impact of the claimant's severe and non-severe impairments when assigning the RFC).

The ALJ made no mention of Grady's fibromyalgia in her decision and did not classify it as a non-medically determinable impairment, non-severe impairment, or severe impairment. (AR 20-23). However, Grady listed fibromyalgia as one of the conditions that limit her ability to work in her applications. (AR 492). Grady also discussed her fibromyalgia pain in her function report. (AR 537). Her fibromyalgia is noted throughout her medical records in 2018 and 2019, and the consultative examiner noted that she was diagnosed with fibromyalgia. (AR 642, 668-69). Grady was also receiving treatment for her fibromyalgia from April 2019 through August 2019 with Ohio Pain Center. (AR 909, 915, 922, 926, 932, 938, 945). Her treating physician provided an opinion that Grady could not work due to her severe pain, specifically noting fibromyalgia. (AR 947). She was still being treated for her fibromyalgia at her first appointment with Dr. Mary Donley in February 2020. (AR 958).

6

When a claimant alleges disability based on fibromyalgia, as Grady does here, the ALJ is required to consider a two-step process for evaluating the diagnosis under Social Security Ruling 12-2p. SSR 12-2p, 2012 WL 3104869 (July 25, 2012). The first step is to determine whether a claimant's fibromyalgia is a medically determinable impairment, and the second step is to assess the intensity and persistence of the symptoms in determining the RFC. *Id.* at *5. A claimant's fibromyalgia may be a medically determinable impairment if she has a history of widespread pain that has persisted for at least three months, at least eleven positive tender points on physical examination bilaterally and both above and below the waist, and repeated manifestations of six or more fibromyalgia symptoms, signs, co-occurring conditions, and evidence that other disorders that could cause these repeated manifestations were excluded. *Id.* at *2-3.

Grady has a history of widespread pain for at least three months, and examinations showed that "all fibromyalgia points" were tender throughout her upper and lower extremities bilaterally. (AR 908, 914, 920, 931, 937, 943, 1183, 1187-88, 1194, 1203). Grady also provided medical evidence of bowel problems, headaches, depression, anxiety, and muscle aches with imaging and testing done to look for explanations. (AR 628-29, 646, 660, 665, 907-08, 914, 920, 931, 936-37, 943, 1183, 1187, 1194, 1203). The ALJ erred by failing to discuss Grady's fibromyalgia anywhere in the decision in accordance with SSR 12-2p. While Grady did not provide specific information in the opening brief or reply brief as to how her fibromyalgia required more limitations in the RFC, she provided medical evidence in the record that indicates her fibromyalgia contributed to her complaints of severe pain, and the ALJ's failure to consider her fibromyalgia requires remand. While the ALJ need not mention every piece of evidence in a claimant's record, the ALJ may not ignore entire lines of contrary evidence. *Arnett*, 676 F.3d at 592. The ALJ's error in failing to consider Grady's fibromyalgia at step two is not harmless, as the ALJ also failed to consider her fibromyalgia and its related symptoms anywhere in the RFC analysis. "[W]ithout any analysis from the ALJ, there is no basis for drawing any conclusions about what evidence [of fibromyalgia] [s]he considered or overlooked." *Thomas*, 826 F.3d at 959.

In sum, the ALJ erred in failing to consider Grady's fibromyalgia anywhere in the decision. As a result, a remand is warranted for reconsideration of Grady's fibromyalgia and its impact on the RFC. Consequently, the Commissioner's final decision will be REMANDED.

### IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is DIRECTED to enter a judgment in favor of Grady and against the Commissioner.

SO ORDERED.

Entered this 1st day of March 2023.

/s/ Susan Collins  
Susan Collins  
United States Magistrate Judge